## FOSTER & BATTELLE v. JOHNSON.

1. J addressed a letter to N, a book-keeper in the house of F & B, grocers, in Mobile, requesting N to send him some groceries to Selma. N turned over the bill to the proper clerk of the house, who forwarded the goods as requested. N had previously lived in Selma, was indebted to J, and was insolvent. It was proved that clerks were in the habit of receiving orders from their friends, which they filled, and charged to their friends on the books of the house from which they purchased. Held, that it should be left to the jury, under the testimony, to determine the nature of the authority to N, and the liability of J to F & B.

Error to the Circuit Court of Dallas.    Before the Hon. E. Pickens.

ASSUMPSIT by the plaintiff in error.

From a bill of exceptions it appears, that the defendant who lived in the interior, wrote a letter to one Nance, a clerk in the house of the plaintiff, at Mobile, requesting him to send him some articles in the grocery line. Nance had previously lived in Selma, and was indebted to the defendant. Upon receiving the order, Nance handed it to another clerk in the establishment, by whom the articles were put up, charged to the defendant, and transmitted to him. It was proved, that it was customary in Mobile for clerks to receive orders from their friends in the country for goods, and for the employers to fill the order, and look to the person ordering the goods for payment, although the order was not directed to the principal, but to the clerk. It was in proof that Nance was insolvent.

The court charged the jury, that the letter to Nance gave him no authority to purchase the goods on the credit of the defendant, and that it was unimportant whether the plaintiffs were, or were not apprised of the contents of the letter to Nance. To this charge the plaintiffs excepted, and now assign it for error.

J. W. Lapsley, for the plaintiff in error, made these points:

1. In the letter from defendant to Nance, set out in the bill of exceptions, the defendant made Nance his agent to procure the goods. This is a fair interpretation of the letter. If it be said the language of the letter is ambiguous, and may mean something else, then the law says, if the meaning be ambiguous, it must be construed *most strongly* against the writer. See Story on Agency, 71, § 74; Kingston v. Kincaid, 1 Wash. C. C. 454, § 74.

The usage was good to fix the meaning of the letter.— Story on Ag. 73, § 76, 77; Cases in 3 U. S. Dig. 234; Munn v. Commission, 15 Johns. 44; Williams v. Mitchell, 17 Mass. 98.

Private instructions of defendant to Nance, could not affect plaintiffs unless known to them. Story on Ag. 70, § 73.

An authority is to be so construed as to include all necessary and usual means for executing it with effect. Theob. on Ag. 255; Howard v. Bailey, 2 H. Blacks. 618; Story on Con. § 287. In construing the letter, as was done by the court, the letter alone should be looked to. The court could not look to any parol evidence to aid in construing the letter. Story on Ag. 73, § 76, 77.

2. That the court erred in charging the jury, that the plaintiffs could not recover, as was done in the final charge. The evidence set out in the bill of exceptions shows, that the goods were shipped by the plaintiffs—the bill of lading showed this fact—that the goods were charged on the books of the plaintiff, by Nance, to the defendant; and the proof conduces to show, that these facts were known to the defendant when he received the goods.

G. W. Gayle, contra.

1. The letter of Johnson to Nance, (the clerk of plaintiff,) clearly shows, that Johnson intended that Nance should forward him goods on account of Nance's indebtedness to him. This intention is indicated by Nance's indebtedness to Johnson, and by the expression in his (J's) letter, "if perfectly convenient, send me," &c. Also, by the expression in the letter, "also, if you can do it without incommoding yourself," &c. It was not Johnson's intention, as above seen, to

contract with Foster & Battelle, or with Nance as their agent ; and neither can make Johnson their debtor without his consent. See Weakly v. Brahan & Atwood, 2 Stew. 500.

2. If the jury should have construed the letter of Johnson, plaintiffs cannot complain, because the court construed it at their request ; and the construction was proper as above shown.

3. The court had no right to charge the jury, " that on the evidence as above stated they should find for the plaintiff." 1. The court having construed the letter at plaintiff's request, that construction authorized a verdict for defendant. The evidence was no longer doubtful, and the court correctly charged that defendant was entitled to a verdict. 2. If the evidence were doubtful, as contended by the plaintiffs, the court then had no right to declare the effect of the evidence, but it belonged to the jury. See Stewart, et al. v. Hood, et al. 10 Ala. 600.

COLLIER, C. J.—In Child, Hibbler & Pearson v. Wofford, 3 Ala. Rep. 564, the defendant addressed a letter to the plaintiff, Child, at the city of Mobile, requesting the latter to send him goods according to a bill annexed. C. and his co-plaintiffs were doing business as partners and commission merchants in that city, and not otherwise, and the defendant resided about two hundred miles in the interior. The plaintiffs sent the goods, but without a bill of lading or letter ; the defendant, as well as his agent who received them, supposed they were sent by C. individually, and that to him alone the defendant was accountable : *Held*, that the plaintiffs were entitled to recover in an action for goods sold and delivered. This court said, that Child and his co-partners being commission merchants, the former could not be presumed to have been engaged in the business of selling goods upon his own account, and for his own exclusive benfit, and that it was a fact determinable by the usual course of dealing, whether the letter might not be regarded as an order which the firm were authorized to fill. Although the defendant received the goods supposing them to belong to C, yet, having used them, he must account to the plaintiffs ; as he received them without advice from any source, by

whom they were sent. " If the usage of trade did not authorize the plaintiffs to fill the order to Child, the defendant might have refused to receive the goods from them, or having received them under the impression that Child was the sole consignor, immediately upon ascertaining the fact to be otherwise, he could have given notice to the plaintiffs that they would be returned.

In the case at bar, the defendant addressed a letter to Nance, requesting certain articles to be sent him from Mobile to Selma. Nance had previously lived in Selma, was indebted to the defendant some two or three hundred dollars, but at the time the order was given was insolvent, and employed as a book-keeper by the plaintiffs, who were wholesale dealers in groceries in the city of Mobile. It was proved on the trial, that clerks were in the habit of receiving orders from their friends, which they filled and had them charged to their friends, on the books of the house from which they purchased. Further, that Nance had turned over the defendant's order to the proper clerk in the plaintiff's establishment, who forwarded the goods as requested.

Now, although the letter, unassisted by proof, indicates a request to Nance individually, to furnish the articles desired, yet it was certainly competent for the plaintiffs to show Nance's connection with their house, and the usual course of business in reference to such orders as that contained in the defendant's letter. Evidence of this character was adduced, and should have been referred to the jury to determine the nature of the authority to Nance, and the question of the defendant's liability to the plaintiffs. The case cited is directly in point. By the charge to the jury, this evidence was virtually excluded—the letter, unaided by any thing extrinsic, was alone looked to, and the inquiries of the jury entirely foreclosed by the instruction, that it did not authorize Nance to purchase the goods ordered, of the plaintiffs, so as to make the defendant liable to them for their payment.

The judgment is consequently reversed, and the cause remanded.